UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD LATHAN,

        Plaintiff,

     v.

C. DUCART, et al.,

        Defendants.

Case No.  14-cv-04389-DMR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF-
INTERVENOR GEORGE HAMILTON'S
MOTION TO INTERVENE; AND
ADDRESSING PLAINTIFF'S OTHER
PENDING MOTIONS**

## I.    INTRODUCTION

Plaintiff Richard Lathan, a state prisoner incarcerated at Pelican Bay State Prison ("PBSP"), brings the instant *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, alleging a First Amendment claim for denial of access to the courts (specifically access to established grievance procedures) against PBSP Chief Appeals Coordinator N. Bramucci and PBSP Assistant Appeals Coordinator M. Townsend, as well as a supervisory liability claim against PBSP Warden C. Ducart.  Plaintiff seeks monetary damages.

This action has been assigned to the undersigned magistrate judge.  Pursuant to 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in a case, including entry of judgment.  Appeal will be directly to the United States Court of Appeals for the Ninth Circuit.  *See* 28 U.S.C. § 636(c)(3).  Both parties have consented to magistrate judge jurisdiction in this matter.  Dkt. 7; Dkt. 24.

Before the court are the following motions: (1) Defendants' Motion for Summary Judgment (dkt. 25); (2) Plaintiff-Intervenor George Hamilton's (also an inmate at PBSP) motion to intervene (dkt. 39); (3) Plaintiff's motion to compel discovery (dkt. 42); and (4) Plaintiff's motion for appointment of counsel (dkt. 44).  All the aforementioned motions are fully briefed.

The court notes that the gist of Defendants' motion for summary judgment is that Plaintiff's complaint is barred based on his failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  Alternatively, Defendants argue that they are entitled to judgment as a matter of law on the grounds that Plaintiff's First

1   Amendment and supervisory liability claims fail because Defendants did not interfere with his

2   access to the courts and Plaintiff has not suffered an actual injury.  Further, Defendants argue they

3   are entitled to qualified immunity.  Having read and considered the papers submitted in connection

4   with this matter, the court hereby GRANTS Defendants' motion for summary judgment, and

5   addresses the remaining motions below.

6   **II.      PRELIMINARY ISSUES AND ANCILLARY MOTIONS**

7         **A.      Motion for Appointment of Counsel**

8       Plaintiff moves the court to appoint counsel.  Dkt. 44.  The Ninth Circuit has held that a

9   district court may ask counsel to represent an indigent litigant only in "exceptional

10   circumstances," the determination of which requires an evaluation of both (1) the likelihood of

11   success on the merits and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the

12   complexity of the legal issues involved.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

13   Plaintiff has been able to present his claim adequately, and the issues are not complex.

14   Accordingly, Plaintiff's motion for appointment of counsel is DENIED.  Dkt. 44.

15         **B.      Motion to Compel Discovery**

16       Plaintiff filed a motion to compel Defendants to produce certain discovery.  Dkt. 42.  In

17   general, the court will not interfere with discovery matters unless and until the parties have

18   satisfied the "meet and confer" requirements of the discovery rules.  *See* Fed. R. Civ. P.

19   37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in

20   good faith conferred or attempted to confer with non-disclosing party in an effort to secure

21   disclosure without court action).  There is nothing in the record that shows that Plaintiff has

22   complied with this rule by making a reasonable and good-faith attempt to "meet and confer"

23   before seeking judicial intervention.  In any event, even if he had, as further explained below, the

24   court will be granting Defendant's dispositive motion.  It seems all the outstanding discovery

25   disputes (which do not pertain to the issues raised in Defendants' motion) will thus be moot after

26   the court grants the dispositive motion.  Therefore, Plaintiff's motion to compel is DENIED.  Dkt.

27   42.

28

United States District Court
Northern District of California

### C.    Motion to Intervene

Plaintiff-Intervenor Hamilton has filed a motion to intervene as a plaintiff in this action under Federal Rule of Civil Procedure 24(b).  Dkt. 39.  Defendants have filed their opposition to the motion.  Dkt. 46.  Plaintiff-Intervenor Hamilton has filed a reply to Defendants' opposition. Dkt. 56.  To date, Plaintiff has not filed a reply to Defendants' opposition, although Plaintiff was given an extension of time to do so, and the March 14, 2016 deadline has passed.  *See* Dkt. 55.

Under Federal Rule of Civil Procedure 24(a), a court must permit any party to intervene in a lawsuit who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. *See* Fed. R. Civ. P. 24(a)(2).  The rule is broadly construed in favor of intervention.  *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997), *cert. denied*, 524 U.S. 926 (1998).  The Ninth Circuit employs four criteria to determine whether intervention under Rule 24(a) is appropriate: (1) the motion to intervene must be timely; (2) the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties.  *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  The burden falls on the applicant to show that all of the requirements for intervention have been met.  *See U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Defendants argue that because the requirements for intervention are not met, the court should deny the motion to intervene.  Dkt. 46 at 2-5.  This court agrees, as explained below.

### 1.  Motion to Intervene Not Timely Filed

Courts generally consider the following factors relevant to the issue of timeliness:  the stage of the proceedings at the time the applicant seeks to intervene; prejudice to the existing parties from applicant's delay in seeking leave to intervene; and any reason for and the length of delay in seeking intervention (how long the prospective intervenors' knew or reasonably should have known of their interest in the litigation).  *See United States v. State of Washington*, 86 F.3d

1   1499, 1502-03 (9th Cir. 1996).

2       Fifteen months have elapsed since Plaintiff filed his complaint in October of 2014 and

3   Plaintiff-Intervenor Hamilton filed his motion to intervene in January 2016.  Dkts. 5, 39.  Notably,

4   Plaintiff-Intervenor Hamilton waited over 5 months after he had been transferred to PBSP before

5   he filed his motion to intervene.  Dkt. 39; Hamilton Decl. ¶ 2.  Therefore, Plaintiff-Intervenor

6   Hamilton's motion is not timely filed.

7                  **2.  No Protectable Interest Related to Property or Transaction**

8       The requirement of a significantly protectable interest is generally satisfied when "the

9   interest is protectable under some law, and that there is a relationship between the legally

10  protected interest and the claims at issue."  *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir.

11  1993) *abrogated on other grounds by Wilderness Soc'y et al. v. United States Forest Serv.*, 630

12  F.3d 1173 (9th Cir. 2011) (en banc).  The applicant must satisfy each element.  *Donnelly v.

13  Glickman*, 159 F.3d 405, 410 (9th Cir. 1983).  "An applicant generally satisfies the 'relationship'

14  requirement only if the resolution of the plaintiff's claims actually will affect the applicant."  *Id.*

15      Plaintiff and Plaintiff-Intervenor Hamilton have different claims arising at different times

16  and seeking different relief.  As elaborated on below, Plaintiff's access to the courts claim arises

17  out of a grievance submitted in 2014 related to a disciplinary rules violation.  Meanwhile,

18  Plaintiff-Intervenor Hamilton's claims arise out of an inmate grievance submitted in 2015

19  regarding his kosher meals, healthcare appliance and personal property.  Hamilton Decl. ¶¶ 3, 5-7.

20  Plaintiff's and Plaintiff-Intervenor Hamilton's claims are different, do not arise from the same

21  event, and are not related to one another in any fashion.  Further, the resolution of Plaintiff's claim

22  will not affect Plaintiff-Intervenor Hamilton's claims.  Consequently, Plaintiff-Intervenor

23  Hamilton has not established that there is a relationship between the legally protected interest and

24  the First Amendment claim at issue in Plaintiff's case.

25            **3.  Disposition of Plaintiff's Action Will Not Impair or Impede Plaintiff-
                 Intervenor Hamilton's Ability to Protect That Interest**

26

27      The disposition of Plaintiff's case would have no bearing on the issues Plaintiff-Intervenor

28  Hamilton has alleged, and visa-versa.  Plaintiff and Plaintiff-Intervenor Hamilton seek relief

United States District Court
Northern District of California

4

related to different events—Plaintiff's denial of processing grievances relating to disciplinary rules

violation in 2014 compared to Plaintiff-Intervenor Hamilton's denial of kosher meal, and removal

of personal and medical property in 2015.  *Compare* Dkt. 5 *with* Hamilton Decl. ¶¶ 3, 5-7.

Plaintiff-Intervenor Hamilton's claims arose a year after incidents leading to Plaintiff's action

occurred.  *See id.*  An order resolving the claim Plaintiff's case would have no bearing on

Plaintiff-Intervenor Hamilton's allegations because they involve different facts and law that arose

over a year apart.  Therefore, Plaintiff-Intervenor Hamilton is not situated such that the disposition

of Plaintiff's action may impair or impede Plaintiff-Intervenor Hamilton's ability to protect that

interest.

### 4. Plaintiff Cannot Represent Plaintiff-Intervenor Hamilton's Interests Because They Have Different Claims

Three factors are considered when determining the adequacy of representation: (1) whether

the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's

arguments; (2) whether the present party is capable and willing to make such arguments; and

(3) whether a proposed intervenor would offer any necessary elements to the proceeding that other

parties would neglect.  *See California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th

Cir. 1986).  As explained above, Plaintiff and Plaintiff-Intervenor Hamilton have different claims

and Plaintiff-Intervenor Hamilton would not be able to offer any necessary elements to Plaintiff's

case that Plaintiff would neglect.  Therefore, Plaintiff cannot represent Plaintiff-Intervenor

Hamilton's interests in this case.  Further, Plaintiff is proceeding *pro se* and therefore he may not

represent the interests of another inmate.  *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th

Cir. 2008).

In sum, Plaintiff-Intervenor Hamilton's motion to intervene fails because the

aforementioned requirements for intervention have not been met.  In addition, because

Defendants' dispositive motion is pending before the court, permitting Plaintiff-Intervenor

Hamilton to intervene into the action at this time would likely cause further delay and undue

prejudice to Defendants.  Accordingly, the court DENIES Plaintiff-Intervenor Hamilton's motion

to intervene.  Dkt. 39.

United States District Court
Northern District of California

United States District Court
Northern District of California

III.   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The central issue presented in Defendants' summary judgment motion is whether Plaintiff properly exhausted his administrative remedies.  Before turning to the facts of this case, the court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

A.   **Legal Framework**

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions.  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Id.* at 84.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).[1]

---

[1] The regulations pertaining to the inmate appeal process were amended effective January 28, 2011.  As explained below, Plaintiff's grievances were submitted *after* January 28, 2011; therefore, the amended regulations were in effect and govern his grievances.

To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 ("appeal" or "grievance") describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing. *Id.* § 3084.2(a)-(c). The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added). Inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed." *Id.* § 3084.8(b)(1).

The CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee ("Director's Level"). *Id.* §§ 3084.7.[2] A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

**B.    Factual Summary**

On March 18, 2014, Sergeant B. Davis found a piece of copper colored metal stock— measuring approximately 4.5 inches and tapered to a point at one end—hidden inside a lotion bottle that was part of Plaintiff's property. Dkt. 1 at 12.[3] Plaintiff was then issued a rules

---

[2] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal. *See* Cal. Code Regs. tit. 15, § 3084.7.

[3] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  violation report ("RVR") for possession of a deadly weapon, which was initially assigned log

2  number A14-03-0011.  *Id.* at 12-13.  Because he received this RVR, Plaintiff was ordered to be

3  placed in the Administrative Segregation Unit ("ASU").  Garske Decl., Ex. B.

4        A disciplinary hearing was held on May 1, 2014, at which Plaintiff was found guilty of

5  possession of a deadly weapon and assessed 360 days of credit forfeiture.  Dkt. 1 at 13.

6        On May 22, 2014, Chief Disciplinary Officer K. Osborne ordered that the RVR be reissued

7  and reheard because a Mental Health Assessment form was not completed as required by

8  Plaintiff's level of mental health care and because Plaintiff did not review the photographic

9  evidence 24 hours in advance of the hearing.  *Id.*

10        On June 5, 2014, the RVR was reissued and assigned log number A14-06-0002.  *Id.* at 12.

11  Prison officials completed a Mental Health Assessment form for Plaintiff, and he was assigned a

12  Staff Assistant, Officer Echavarria.  *Id.* at 13.  Plaintiff was given an opportunity to review the

13  photographic evidence more than 24 hours prior to the hearing, but he declined.  *Id.* at 14.

14        A new disciplinary hearing was held on July 4, 2014, at which Plaintiff was found guilty of

15  possession of a weapon and assessed 360 days of credit forfeiture.  *Id.* at 14-15.  The Senior

16  Hearing Officer referred Plaintiff to the ASU Classification Committee ("Committee") in order to

17  determine whether or not to impose a security housing unit ("SHU") term.  *Id.* at 15.  The Senior

18  Hearing Officer then explained Plaintiff's appeal rights, and directed him to refer to Title 15 of the

19  California Code of Regulations § 3084.1 for additional information on appeal procedures.  *Id.*

20        On August 13, 2014, Plaintiff appeared before the Committee.  Garske Decl., Ex. B.  The

21  Committee determined that the guilty finding on the offense of possession of a deadly weapon

22  warranted a SHU term.  *Id.*  The Committee therefore imposed a 10-month initial SHU term for

23  "Participating In, or Attempt[ing] to Threaten Institution Security."  *Id.*  The Committee referred

24  the SHU term to the Classification Staff Representative ("CSR") for audit and review.  *Id.*

25  Plaintiff was advised of his right to appeal the Committee's action and that to preserve his appeal

26  rights he must submit his appeal within 30 calendar days.  *Id.*  On September 18, 2014, the CSR,

27  K. Moore, approved Plaintiff's 10-month SHU term assessed by the Committee on August 13,

28  2014.  Garske Decl., Ex.  C.

### C.   Grievances

Plaintiff submitted two grievances relating to the May 22, 2014 RVR and the resulting guilty finding: inmate grievance log numbers PBSP-S-14-01432 and PBSP-S-14-01900 (hereinafter "PBSP-S-14-01432" and "PBSP-S-14-01900").  He also submitted a group appeal complaining about PBSP's grievance process, grievance log number PBSP-B-14-03574 (hereinafter "PBSP-B-14-03574" or "group appeal").

#### 1.   Grievance Log No. PBSP-S-14-01432

On May 22, 2014, Plaintiff submitted PBSP-S-14-01432.  Dkt. 33-1 at 4-7.  PBSP-S-14-01432 appealed the May 22, 2014 RVR and requested: (1) that the RVR be dismissed or modified; (2) that he be brought back before the Committee so he could request a transfer; and (3) an explanation for his missing property.  *Id.* at 4, 6; Townsend Decl. ¶ 9.

On May 27, 2014, PBSP-S-14-01432 was screened and rejected at the first level of review because it contained multiple unrelated issues.  Dkt. 1 at 34.[4]  Specifically, PBSP-S-14-01432 challenged the May 22, 2014 RVR, requested a transfer, and inquired about missing property.  *Id.*; Cal. Code Regs. tit. 15, § 3084.6(b)(8).  Defendant Bramucci authored the screening letter and explained that appealing the findings of a RVR was a separate issue from a request for transfer or the inquiry into the missing property issue.  Dkt. 1 at 34.  The letter instructed Plaintiff that he "may resubmit the unrelated issues separately using separate appeal."  *Id.*  The letter advised Plaintiff that once he received the final copy of the RVR, he would have 30 calendar days to submit his appeal.  *Id.*  The letter also advised that to appeal a transfer or property request, Plaintiff first needed to attempt to resolve the issue by submitting an Inmate/Parolee Request for Interview, Item or Service ("CDCR 22 Form") through the Supervisor's level of review.  *Id.*  The letter also instructed Plaintiff not to use string on the appeal.  Garske Decl., Ex. D; Cal. Code Regs. tit. 15, § 3084.6(b)(11).

Instead of doing as directed, Plaintiff resubmitted the exact same grievance to the appeals

---

[4] The court notes that the parties have attached copies of the relevant screening letters. However, only Plaintiff's copies have signatures by the authors of each letter.  *See generally* Dkt. 1.  Defendants' letters are not signed.  *See generally* Garske Decl., Exs. D-L.  Therefore, the court will use the copies of the signed letters submitted by Plaintiff.  If Plaintiff was unable to submit a copy of a particular letter, then the court will refer to Defendants' copy of that letter.

United States District Court
Northern District of California

office, and it was rejected again on May 30, 2014.  Dkt. 33-1 at 4; Dkt. 33-2 at 13-14.  The screening letter, authored by Defendant Bramucci, advised that: (1) his appeal was again being rejected because it contained multiple issues that did not derive from a single event; (2) the May 22, 2014 RVR is a separate issue from a transfer or missing property claim and that he needed to submit separate appeals for separate issues; (3) he needed to use the CDCR 22 Form process for property and transfer requests; (4) once he received the final of the RVR, he had 30 calendar days from the date he received the final copy to submit his appeal; (5) he was not to attach any physical or organic objects to his appeal documents, such as tape or string; and (6) failure to follow provided instructions would result in his appeal being cancelled under Title 15 of the California Code of Regulations title 15 § 3084.6(c)(3).  Dkt. 33-2 at 13-14.  The letter again directed Plaintiff that he "may resubmit the unrelated issues separately using separate appeals," and it explicitly instructed him to remove any string or fruit stickers from his appeal.  *Id.*

On June 3, 2014, the appeals office cancelled Plaintiff's grievance under Title 15 of the California Code of Regulations § 3084.6(c)(3).  Garske Decl., Ex. F.  The screening letter indicated that the grievance was cancelled for Plaintiff's failure to follow the appeals office's repeated instructions for correcting the problems with his appeal.  *Id.*  The letter noted that Plaintiff "continue[d] to submit the appeal disregarding the Appeals Office instruction." *Id.*

Thereafter, Plaintiff attempted to resubmit the cancelled grievance.  Dkt. 33-1 at 12.  On June 5, 2014, Defendant Townsend authored the letter determining that Plaintiff was "attempting to submit an appeal that ha[d] been previously cancelled" and informing Plaintiff that his grievance was being returned to him.  *Id.*  Defendant Townsend further informed Plaintiff that under Title 15 of the California Code of Regulations § 3084.4, his actions were "considered misuse or abuse of the appeals process." *Id.*  The letter further informed Plaintiff "once an appeal has been cancelled, the appeal may not be resubmitted." *Id.*  Instead, if Plaintiff disagreed with the cancellation of his grievance, he could challenge the cancellation by filing a separate appeal on the cancellation decision. *Id*.

Thereafter, Plaintiff again tried to resubmit the cancelled grievance.  Garske Decl., Ex. H.  On June 9, 2014, the appeals office returned the grievance to Plaintiff and again advised him that

United States District Court
Northern District of California

his actions were a "misuse or abuse of the appeals process," under Title 15 of the California Code of Regulations § 3084.  *Id.*  And, again, the letter advised Plaintiff that he could submit a new grievance challenging the cancellation decision and repeated the same instructions on how to do so.  *Id.*

There is nothing further in the record showing that Plaintiff filed a separate new grievance on the cancellation decision, as he was instructed in the June 3, 5 and 9 letters.

The record shows that PBSP-S-14-01432 was not submitted to the third level for review. Townsend Decl. ¶ 9, Ex. B.

### 2. Grievance Log No. PBSP-S-14-01900, Related CDCR 22 Form and Letter to Office of Internal Affairs

On July 10, 2014, Plaintiff submitted PBSP-S-14-01900 appealing two issues: (1) the May 22, 2014 RVR; and (2) an allegation that on May 7, 2014,[5] the CSR "reviewed case factors in disagreement with the RVR then instructing [the Committee] to release [Plaintiff] to [general population] or transfer [him]."  Dkt. 1 at 6.

PBSP-S-14-01900 was bypassed at the first level of review.  *Id.*

On July 11, 2014, PBSP-S-14-01900 was screened and rejected at the second level of review because it "involve[d] multiple issues that d[id] not derive from a single event, or [we]re not directly related and cannot be reasonably addressed in a single response due to this fact." *Id.* at 7, 31; Cal. Code Regs. tit. 15, § 3084.6(b)(8).  Defendant Bramucci, who authored the screening letter, provided Plaintiff with the following advisements: (1) that Plaintiff could resubmit the unrelated issues separately using separate appeals; (2) that Plaintiff could only submit one non-emergency appeal every 14 calendar days; (3) that the Committee's and the CSR's actions were "separate issues from RVR findings"; (4) that under prison regulations, the Committee's actions from June 4, 2014 were "past time constraints for appealing"; and (5) that in order to resubmit his appeal regarding the RVR findings, he had to "[r]ewrite his appeal and remove the Action

---

[5] The record does not include the alleged May 7, 2014 review by the CSR.  However, the court need not ask the parties to provide a copy because it is irrelevant whether or not Plaintiff accurately depicted what was determined in the May 7, 2014 review.  Instead, the court only includes this information to show which issues Plaintiff was appealing in PBSP-S-14-01900.

United States District Court
Northern District of California

Requested regarding the [Committee's]/CSR decisions/recommendations to release [him] to [general population] or transfer [him]." Dkt. 1 at 31.  The letter also provided Plaintiff with a description of the supporting documents that he needed to attach to his grievance when he resubmitted it.  *Id*.

Thereafter, Plaintiff resubmitted PBSP-S-14-01900.  On July 15, 2014, PBSP-S-14-01900 was again rejected by the appeals office for the same reasons described in the above-referenced July 11, 2014 letter.  *Id*. at 32.  Defendant Bramucci, who also authored this screening letter, again described what actions Plaintiff could take to fix the problems with his appeal and explained that if he failed to follow the instructions, his appeal would be cancelled pursuant to Title 15 of the California Code of Regulations § 3084.6(c)(3).  *Id*.

Thereafter, Plaintiff resubmitted PBSP-S-14-01900.  On July 21, 2014, the appeals office cancelled PBSP-S-14-01900 pursuant to Title 15 of the California Code of Regulations § 3084.6(c)(3).  *Id*. at 33.  Again, Defendant Bramucci authored the screening letter, and he noted that it was being cancelled because Plaintiff continued to submit a rejected appeal while disregarding staff's previous instructions to correct the appeal.  *Id*.  The cancellation letter also stated that the time to appeal the Committee's June 4, 2014 decisions had passed and advised that he could appeal the cancellation of his grievance within 30 calendar days if he disagreed with the decision.  *Id*.

Plaintiff then attempted to resubmit the cancelled PBSP-S-14-01900.  On July 23, 2014, his resubmitted grievance was rejected because it was determined that he was "attempting to submit an appeal that has been previously cancelled."  *Id.*, Ex. L.  Again Defendant Bramucci authored the screening letter and further advised: (1) that resubmitting cancelled appeals was considered misuse of the appeal process and repeated violations may lead to appeal restrictions; and (2) that if he disagreed with the cancellation of his grievance, he could submit a new grievance within 30 calendar days.  *Id.*

On July 24, 2014, Plaintiff submitted a CDCR 22 Form to Defendant Bramucci, requesting that she excuse herself from processing his appeal because he believed she was deliberately hindering his attempts to pursue his appeals through the appeal process.  Garske Decl., Ex. M.

On August 4, 2014, Correctional Administrator K. R. Cruse responded to the CDCR 22 Form in a letter, which contained the following advisements: (1) that a review of the Inmate Appeals Tracking System ("IATS") revealed that PBSP-S-14-01432 and PBSP-S-14-01900 were cancelled for failure to follow repeated instructions to correct the multiple unrelated issues listed in the appeal as required under Title 15 of the California Code of Regulations § 3084.6(b)(8); (2) that a review of Plaintiff's 2014 grievances indicated that they were processed in accordance with Title 15 of the California Code of Regulations § 3084; (3) that a review of Plaintiff's grievances showed that he had a tendency to group multiple issues into one appeal and that he did not correct this problem when directed to do so by the appeals coordinator; (4) that Plaintiff's grievances had been properly screened out; and (5) that if he had any further issues, he should send a CDCR 22 Form to the appeals coordinator. *Id.*, Ex. N.

On August 12, 2014, Plaintiff sent a document entitled, "Proof of Service," to Defendant Ducart. *Id.*, Ex. O. Plaintiff attached a document that he described as the "original 602," and appeared to request processing of the grievance at the second level of review. *Id.*

On September 2, 2014, Correctional Administrator Cruse responded to Plaintiff's "Proof of Service" by sending him another letter. *Id.*, Ex. P. The letter made the following observations and statements: (1) that the appeal for which he was requesting second-level processing had already been reviewed by the Warden on August 4, 2014; (2) that it appeared that Plaintiff was claiming that his appeals were being improperly screened, rejected, and cancelled by Defendant Bramucci; (3) that a review of IATS revealed that PBSP-S-14-01900 was cancelled for failure to follow repeated instructions to correct the multiple unrelated issues listed in the appeal under Title 15 of the California Code of Regulations § 3084.6(b)(8); (4) that a review of all of his appeals for 2014 indicated that his appeals were processed in accordance with Title 15 of the California Code of Regulations § 3084; (5) that a review of his appeals showed that he has a tendency to group multiple issues into one appeal and fails to correct this problem when directed to do so by the appeals coordinator; (6) that his grievances had been correctly screened out, and (7) that Plaintiff should stop filing repeated appeals and requests for Warden reviews over the same issues. *Id.* There is nothing in the record indicating that Plaintiff responded to the aforementioned letter. Nor

United States District Court
Northern District of California

United States District Court
Northern District of California

1    is there anything indicating that he formally appealed this issue by filing an inmate grievance and

2    pursuing it to the Director's level of appeal.

3         On September 8, 2014, Plaintiff wrote a letter to the Office of Internal Affairs requesting

4    that his due process rights be redressed—particularly the guilty finding on the weapons possession

5    RVR. *Id.*, Ex. Q. Plaintiff alleged that the PBSP appeals office, under the influence of the ASU

6    Classification Committee, deliberately hindered and circumvented his right to appeal the illegal

7    guilty findings imposed on him. *Id.* Plaintiff claimed that it was routine practice for PBSP to find

8    inmates guilty of bogus RVRs, assess SHU terms, and then deny inmates the basic right to redress

9    the legality of the findings. *Id.* Plaintiff requested an investigation of these claims. *Id.*

10        On October 8, 2014, Special Agent William Wells from the Office of Internal Affairs

11   wrote to Defendant Ducart regarding Plaintiff's September 8, 2014 letter and advised him that the

12   issues were better addressed at the institutional level. *Id.*, Ex. R.

13        On October 23, 2014, Correctional Administrator K. Osborne wrote to Plaintiff in response

14   to his September 16, 2014 letter to Internal Affairs, including Plaintiff's claims that he was being

15   hindered from appealing PBSP-S-14-01900. *Id.*, Ex. S. Correctional Administrator Osborne's

16   letter discussed the appeals office's previous correspondence to Plaintiff that provided detailed

17   explanations of the problems with the grievances Plaintiff submitted and how Plaintiff could

18   correct those problems to comply with the grievance regulations. *Id.* It also explained how

19   Plaintiff had failed to take any of the recommended actions to fix his grievances despite the

20   appeals office's attempts to assist him. *Id.* Finally, it explained that PBSP staff tried to guide

21   Plaintiff through the process but that he continued to ignore their directions, which resulted in

22   Plaintiff's appeal being cancelled. *Id.*

23              **3.   Grievance Log No. PBSP-B-14-03574 (Group Appeal)**

24        On December 22, 2014, Plaintiff submitted PBSP-B-14-03574 appealing Defendants

25   Bramucci's and Townsend's alleged "improper screening" of inmate grievances. Dkt. 33-2 at 1.

26   Specifically, Plaintiff alleged that these Defendants "obstruct [and] procedurally manipulate the

27   appeals process thereby circumventing [and] denying inmate[']s appeal issues." *Id.* Plaintiff

28   requested that the "underground" improper screening practices to cancel and reject [and]

14

terminating valid appeals issues be barred from its use and illegal practices and that a thorough and independent investigation be conducted . . . ." Dkt. 33-1 at 21, Dkt. 33-2 at 1.  Plaintiff also requested that Defendants Bramucci and Townsend be removed from their official capacities as appeals coordinators.  Dkt. 33-2 at 1.  Plaintiff submitted PBSP-B-14-03574 as a group appeal on behalf of eleven other inmates, who all signed the group appeal form.  *Id.* at 3.

On December 23, 2014, PBSP-B-14-03574 was rejected at the first level of review.  Dkt. 33-2 at 7.  Defendant Townsend authored the screening letter, which stated that PBSP-B-14-03574 was being rejected pursuant to Title 15 of the California Code of Regulations § 3084.6(b)(3) because Plaintiff had "exceeded the allowable number of appeals filed in a 14 calendar day period."  *Id.* at 7.  Defendant Townsend gave the following additional reasons for rejecting PBSP-B-14-03574, including: (1) the Plaintiff's most recently-filed grievance, PBSP-B-14-03417, was "accepted on 12/17/14" and therefore, because it had been accepted, Plaintiff "failed to provide documentation supporting [his] allegations of [Defendants] denying [his] right to use the appeal process"; (2) pursuant to Title 15 of the California Code of Regulations § 3084.2(h)(2) "this appeal does not meet the criteria to be processed as a Group Appeal due to each inmate having individual appeal circumstances"; (3) pursuant to Title 15 of the California Code of Regulations § 3021, Plaintiff was advised that "[i]nmates . . . must not intentionally enter or introduce false information into or upon any record or document maintained by the [CDCR]" because Defendant Townsend noted that the issues relating to the denial of the right to use the appeals process "do not apply to multiple inmates[6] listed on the 602-G [group appeal form]."  *Id.* at 8 (footnote and brackets added).  Plaintiff was then instructed to "[r]emove the CDCR 602-G," the group appeal form, "for further processing" and to "[p]rovide documentation  of [his] allegations."  *Id.*

Thereafter, Plaintiff resubmitted PBSP-B-14-03574.  On December 30, 2014, PBSP-B-14-03574 was again rejected because Plaintiff had "exceeded the allowable number of appeals filed in

_____

[6] The court notes that Plaintiff's group appeal form includes notes written next to the names of some of the eleven inmates who signed the group appeal.  Dkt. 33-2 at 3.  Next to six inmates, it states: "No 2014 Appeals."  *Id.*  Next to three inmates, it states: "No Appeals Rej/Can in Last 30 days."  *Id.*

United States District Court
Northern District of California

a 14 calendar day period" pursuant to Title 15 of the California Code of Regulations

§ 3084.6(b)(3).  *Id.* at 6.  In the screening letter, Appeals Coordinator A. Bond, stated: "Do Not

Submit Another Appeal Until 01/01/15."[7] *Id.*  Appeals Coordinator Bond again instructed Plaintiff

to: (1) remove the CDCR 602-G for further processing; (2) not to intentionally enter or introduce

false information into his grievance; and (3) to provide documentation of his allegations.  *Id.*

Thereafter, Plaintiff resubmitted PBSP-B-14-03574.  On January 5, 2015, PBSP-B-14-

03574 was again rejected at the first level of review.  However, the record does not include a copy

of the January 5, 2015 screening letter.  Nothing further in the record indicates whether or not

Plaintiff further pursued PBSP-B-14-03574 by resubmitting his appeal or appealing it to the

Director's level of review.[8]

### D.    Procedural History

On August 30, 2014, Plaintiff instituted the instant action by first filing a letter (Dkt. 1) and

later a complaint (Dkt. 5).  In its November 21, 2014 Order of Service, the court found that

Plaintiff had alleged a cognizable claim for a violation of his First Amendment right of access to

the courts based on Defendants Bramucci's and Townsend's failure to process his inmate

grievances. Dkt. 14 at 2 (citing Dkt. 5 at 3).  The court further found Plaintiff had stated a

cognizable supervisory liability claim against Defendant Ducart for failing to correct his

subordinates' actions after being alerted by Plaintiff via "confidential mail" that the "appeals

process [was] being obstructed . . . ." *Id.* (citing Dkt. 5 at 4).  The court then served the complaint

on Defendants.

Defendants have now filed a motion for summary judgment.  As mentioned above, their

primary argument is based on the ground that Plaintiff failed to exhaust his administrative

remedies.  Alternatively, Defendants argue that they are entitled to judgment as a matter of law on

United States District Court
Northern District of California

---

[7] Plaintiff had submitted his last grievance on December 17, 2014; therefore, he had to wait until 14 days passed, or until January 1, 2015, before filing another non-emergency appeal. *See* Cal. Code Regs. tit. 15, § 3084.6(b)(3).

[8] Because it will be resolving the motion for summary judgment below, the court need not require the parities to file a complete record relating to PBSP-B-14-03574 as it has no bearing on the court's decision on whether or not to grant the motion for summary judgment.

the grounds that Plaintiff's First Amendment and supervisory liability claims fail because

Defendants did not interfere with his access to the courts and Plaintiff has not suffered an actual

injury.  Further, Defendants argue they are entitled to qualified immunity.  The motion is fully

briefed and ripe for adjudication.

## IV.    LEGAL STANDARD FOR SUMAMRY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of

establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in

the record").  If the moving party meets this initial burden, the burden then shifts to the non-

moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*,

477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised

in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

banc).  The defendants have the initial burden to prove "that there was an available administrative

remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  If the

defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence

showing that there is something in his particular case that made the existing and generally

available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of

proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment

should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

A district court may only consider admissible evidence in ruling on a motion for summary

judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of the motion for summary judgment, Defendants have presented declarations and

exhibits from their attorney, Sharon A. Garske, Esq., and PBSP Inmate Appeals Coordinator M. Townsend. Dkts. 27-28. Defendants have also filed an unopposed request for judicial notice ("RJN"). Dkt. 29. Good cause appearing, Defendants' RJN is GRANTED. The court may take judicial notice of the March 11, 2008 Abstract of Judgment—Prison Commitment—Determinate issued by the Los Angeles Superior Court in Case No. filed as Exhibit A to the RJN, because "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Also attached to Defendants' RJN is a copy of relevant portions of the CDCR Department Operations Manual related to inmate grievances. Attorney Garske states that the submitted exhibits are a true and correct copy of what it purports to be. Defs.' RJN at 2. Therefore, the court will also consider the attached portions of CDCR Department Operations Manual related to inmate grievances in connection with the instant motion for summary judgment.

Meanwhile, Plaintiff has filed a verified complaint (Dkt. 5) and a verified declaration in support of his opposition to Defendants' motion for summary judgment (Dkt. 33 at 17-21).[9] The court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

**V.     DISCUSSION ON MOTION FOR SUMMARY JUDGMENT**

    **A.     Analysis of Motion for Summary Judgment Based on Failure to Exhaust**

        **1.     Defendants' Initial Burden of Proving Unexhaustion**

As of December 18, 2014, Plaintiff had submitted 13 inmate grievances while he was at PBSP. Townsend Decl., Ex. A. Defendants point out that out of these grievances, PBSP has no record of Plaintiff submitting a particular grievance to the appeals office in 2014 against Defendants Ducart, Bramucci, or Townsend on the issue that Defendants Bramucci and Townsend had improperly screened and cancelled grievances PBSP-S-14-01432 and PBSP-S-14- 01900, or that Defendant Ducart was aware of this issue. *Id.* at ¶ 10. Even if Plaintiff complained about the

_____

[9] Plaintiff has not verified his opposition or his "Statement of Disputed Factual Issues" because he failed to sign either under penalty of perjury. *See* Dkt. 33. at 16, 21.

United States District Court
Northern District of California

processing of his grievances within the cancelled grievances, Defendants point out that Plaintiff did not submit a separate appeal challenging the cancelation of PBSP-S-14-01432 and PBSP-S-14-01900, and he did not pursue such an appeal to the Director's Level of Review to exhaust his administrative remedies. *Id.* at ¶ 9 & Ex. B.

Once cancelled, an appeal shall not be accepted except pursuant to section 3084.6(a)(3), which provides that "[a]t the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that the cancellation was made in error or new information is received which makes the appeal eligible for further review." Cal. Code Regs. tit. 15, § 3084.6(a)(3). Here, no such determination of error was made and the cancelled PBSP-S-14-01432 and PBSP-S-14-01900 were not eligible for further review. Finally, Plaintiff was advised numerous times that he could file a separate appeal from the cancellation decision, but he did not do so. Because the "cancellation" of an appeal "does not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the evidence submitted by Defendants satisfies their initial burden of proving that there were available administrative remedies for Plaintiff, and that Plaintiff failed to properly exhaust those remedies, *see Albino*, 747 F.3d at 1172.

### 2. Plaintiff's Burden of Proving Unavailability of Administrative Remedies

Defendants have adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust. As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Here, it is unclear whether Plaintiff has met the first *Sapp* factor based on his attempts to

file PBSP-S-14-01432 and PBSP-S-14-01900 because these grievances do not specifically challenge the claims in the instant complaint relating to a denial of Plaintiff's right to access of the courts. *See id.* However, even if these grievances would have sufficed to allow Plaintiff to meet the first *Sapp* factor, as explained above, both grievances were cancelled based on multiple prison regulations. Therefore, in order to satisfy the second *Sapp* factor Plaintiff must show that prison officials rejected and cancelled PBSP-S-14-01432 and PBSP-S-14-01900 for reasons inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. Instead of doing so, Plaintiff makes a conclusory argument that PBSP-S-14-01432 and PBSP-S-14-01900 were "returned marked cancelled and or rejected with a frivolous explanation . . . ." Dkt. 33 at 7. The court finds no merit to Plaintiff's claim that either PBSP-S-14-01432 or PBSP-S-14-01900 was cancelled for "frivolous" reasons. As explained in detail above, the appeals coordinators rejected cancelled PBSP-S-14-01432 and PBSP-S-14-01900 pursuant to various sections of Title 15 of the California Code of Regulations.

Accordingly, Plaintiff has not satisfied the second *Sapp* factor because has not shown that prison officials rejected and cancelled PBSP-S-14-01432 and PBSP-S-14-01900 for any reason inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. Thus, Plaintiff would not be excused from the exhaustion requirement under *Sapp.* Therefore, Plaintiff has not met his burden to show that there was something in his particular case that made generally available administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172.

Finally, the record shows that on December 22, 2014, the group appeal PBSP-B-14-03574 against Defendants Bramucci and Townsend was submitted by Plaintiff "6-7 months after the original grievances were submitted," and Defendants argue that this group appeal cannot be used to demonstrate that he exhausted his administrative remedies for issues in this lawsuit. Dkt. 35 at 5 (citing Dkt. 33-1 at 21-22, Dkt. 33-2 at 1-3). Further, the undisputed evidence shows that PBSP-B-14-03574 was rejected at the first level of review on December 23 and 30, 2015 as well as on January 5, 2015. Dkt. 33-1 at 21. Finally, the undisputed evidence shows that Plaintiff commenced group appeal PBSP-B-14-03574 on December 22, 2014 (Dkt. 33-1 at 21), which is almost two-and-a-half months after Plaintiff filed his complaint on October 10, 2014 (Dkt. 5 at 1).

1    It is unclear whether or not PBSP-B-14-03574 relates to the specific issues in the instant action

2    because, as Defendants argued, it was filed long after the original grievances where submitted.

3    Moreover, the record is incomplete and fails to show whether Plaintiff resubmitted his appeal or

4    further pursued it to the Director's level of appeal.  Even if the record was complete and showed

5    that Plaintiff exhausted PBSP-B-14-03574 to the Director's level of review, any such decision at

6    the final level would have been issued sometime in 2015—which would have been *after* the

7    instant complaint was filed on October 10, 2014.  Dkt. 5 at 1.  Therefore, the court finds that even

8    if PBSP-B-14-03574 related to the issues in the instant action, PBSP-B-14-03574 would not have

9    concluded until *after* the instant complaint was filed, and thus it did not exhaust any claim in this

10   action.  *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (An action must be

11   dismissed unless the prisoner exhausted his available administrative remedies before he filed suit,

12   even if the prisoner fully exhausts while the suit is pending.).

### 3.  Defendants' Ultimate Burden of Proving Unexhaustion

14         In sum, Defendants have met their ultimate burden of presenting evidence of unexhaustion,

15   which Plaintiff has not persuasively disputed.  Plaintiff's repeated refiling of rejected grievances

16   without complying with procedures does not constitute proper exhaustion.  The prison's

17   requirements define the boundaries of proper exhaustion.  *Jones*, 549 U.S. at 218.  A grievant must

18   use all steps the prison holds out, enabling the prison to reach the merits of the issue.  *Woodford*,

19   548 U.S. at 90.  The undisputed facts show that Plaintiff failed to comply with these requirements,

20   and he has not presented evidence that precludes summary judgment.

21         Accordingly, Defendants' motion for summary judgment is GRANTED on the ground that

22   Plaintiff failed to exhaust his administrative remedies as to his First Amendment claim of a denial

23   of access to the courts.

### B.    Analysis of Motion for Summary Judgment Based on Alternative Arguments

### 1.  First Amendment Claim Against Defendants Bramucci and Townsend

26         Assuming arguendo that Plaintiff had exhausted his administrative remedies as to his First

27   Amendment claim, the court will now also consider Defendants' alternative argument that they are

28   entitled to judgment as a matter of law on the grounds that Plaintiff's First Amendment and

United States District Court
Northern District of California

1    supervisory liability claims fail because Defendants did not interfere with his access to courts and

2    Plaintiff has not suffered an actual injury.

3              Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343,

4    350 (1996).  An inmate's right to meaningful access to the courts extends to established prison

5    grievance procedures.  *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995) *abrogated on other*

6    *grounds by Shaw v. Murphy*, 532 U.S. 223 (2001).  To establish a claim for a violation of this

7    right, the prisoner must prove that he suffered "actual injury" because he was denied such access.

8    *Id.* at 350-55.  To prove an actual injury, he must show that the actions of prison officials hindered

9    his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.

10   *See id.* at 354-55.

11             Here, Plaintiff has presented no evidence to support his assertion that he suffered an actual

12   injury to court access as a result of Defendants Bramucci's and Townsend's actions of rejecting or

13   canceling his grievances.  Plaintiff's mere dissatisfaction with the handling of PBSP-S-14-01432

14   and PBSP-S-14- 01900 cannot establish a constitutional violation.  *See Ramirez v. Galaza*, 334

15   F.3d 850, 860 (9th Cir. 2003) (holding that a prison official's involvement in the handling of

16   inmate appeals, without more, is not actionable under section 1983).  Furthermore, Plaintiff cannot

17   prove prejudice regarding any contemplated or existing litigation, such as the failure or inability to

18   meet a filing deadline.  *See Lewis*, 518 U.S. at 348-49.

19             Accordingly, Plaintiff's access to the courts claim fails as a matter of law.  Therefore,

20   Defendants Bramucci and Townsend are entitled to summary judgment as to Plaintiff's claim of

21   denial of access to the courts.[10]

22                        **2.  Supervisory Liability Claims Against Defendant Ducart**

23   The Ninth Circuit has stated:

24             [S]ection 1983 suits do not impose liability on supervising officers
             under a respondeat superior theory of liability.  [citation omitted].
25             Instead, supervising officers can be held liable under section 1983
             "only if they play an affirmative part in the alleged deprivation of
26

27   _____

28             [10] The court's finding that Defendants are entitled to summary judgment as to Plaintiff's
     First Amendment claim obviates the need to address Defendants' alternative argument that they
     are entitled to qualified immunity.

United States District Court
Northern District of California

1      constitutional rights." [citation omitted]. The supervising officer
       has to "set in motion a series of acts by others . . . , which he knew
2      or reasonably should have known, would cause others to inflict the
       constitutional injury." [citation omitted].

3    *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) *abrogated on other grounds*

4    *by Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177 (2004).

5    Additionally, a supervisor may be liable under section 1983 if a plaintiff can show that "'in light

6    of the duties assigned to specific officers or employees, the need for more or different training is

7    obvious, and the inadequacy so likely to result in violations of constitutional rights, that the

8    policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'"

9    *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *see also Redman v. County of San Diego*,

10   942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) ("Supervisory liability exists even without overt

11   personal participation in the offensive act if supervisory officials implement a policy so deficient

12   that the policy itself is a repudiation of constitutional rights and is the moving force of a

13   constitutional violation."), *abrogated on other grounds*, *Farmer v. Brennan*, 511 U.S. 825 (1994).

14         Here, because Defendants Bramucci and Townsend were found not liable for any claims,

15   there would be no supervisory liability against Defendant Ducart. Therefore, the court GRANTS

16   Defendants' motion for summary judgment as to Plaintiff's supervisory liability claim against

17   Defendant Ducart.

18   **VI.   CONCLUSION**

19         For the reasons outlined above, the court orders as follows:

20         1.     Plaintiff's motion for appointment of counsel is DENIED. Dkt. 44.

21         2.     Plaintiff's motion to compel is DENIED. Dkt. 42.

22         3.     Plaintiff-Intervenor George Hamilton's motion to intervene as a plaintiff in this

23   action under Federal Rule of Civil Procedure 24(b) is DENIED. Dkt. 39.

24         4.     Defendants' unopposed request for judicial notice is GRANTED. Dkt. 29.

25         5.     Defendants' motion for summary judgment is GRANTED. Dkt. 25.

26         6.     The Clerk of the Court shall enter judgment, close the file, and terminate all

27   pending matters.

28

United States District Court
Northern District of California

23

1       7.      This Order terminates Docket Nos. 25, 39, 42 and 44.

2       IT IS SO ORDERED.

3   Dated:  March 25, 2016

    _____

    DONNA M. RYU
    United States Magistrate Judge